IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ST. PAUL'S PROTESTANT          :
EPISCOPAL CHURCH OF THE        :
VILLAGE OF OAKWOOD,            :

      Plaintiff,             :

    vs.                        :     Case No. C-3-88-230

CITY OF OAKWOOD,               :     Judge Walter Herbert Rice

      Defendant.             :

------------------------------------------------------------------
    DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
    SUMMARY JUDGMENT (DOC. #12) IN PART AND NOT RULING UPON
    SAME IN PART; DECISION AND ENTRY OVERRULING PLAINTIFF'S
    MOTION FOR SUMMARY JUDGMENT (DOC. #42) IN PART AND NOT
    RULING UPON SAME IN PART; JUDGMENT TO BE ENTERED IN
    FAVOR OF DEFENDANT AND AGAINST PLAINTIFF DISMISSING
    PLAINTIFF'S FEDERAL AND STATE CONSTITUTIONAL CLAIMS
    (THE FIRST AND SECOND CLAIMS FOR RELIEF IN PLAINTIFF'S
    COMPLAINT [DOC. #1]) WITH PREJUDICE AND ITS OTHER STATE
    LAW CLAIMS (THE THIRD AND FOURTH CLAIMS IN PLAINTIFF'S
    COMPLAINT) WITHOUT PREJUDICE; TERMINATION ENTRY
------------------------------------------------------------------

    This case arises out of the Plaintiff's desire to tear down

two duplexes owned by it in order to build a parking lot on the

tracts of land upon which the duplexes are located. The City of

Oakwood, Ohio ("Oakwood" or "Defendant"), has been able to parry

Plaintiff's every thrust with the result being that the duplexes

stand and Plaintiff does not have its desired parking lot;

therefore, Plaintiff has filed this action against Oakwood,

seeking from this Court that which Oakwood would not provide.[1]

---

    [1]Initially Plaintiff also named Oakwood's mayor, city
manager, city attorney, building inspector and a member of its
planning commission as defendants herein (collectively
"Individual Defendants"). Plaintiff subsequently dismissed the
Individual Defendants. See Doc. #58.



Most of the events which surround this controversy are not in dispute. Plaintiff, St. Paul's Protestant Episcopal Church of the Village of Oakwood ("St. Paul's" or "Plaintiff"), is a religious institution, organized as a non-profit corporation under the laws of Ohio. St. Paul's facilities for worship are located in Oakwood at 33 West Dixon Avenue in an area which is zoned residential. The worship facilities abut a dedicated street on the south and dedicated alleys on the east, west and north. Using all available land, St. Paul's has been able to establish only 27 off-street parking places on its property.[2] Although off-street parking on St. Paul's property is so limited, individuals using the church have access to an additional 225 parking places at a municipal parking lot one-half block from the church, at Harman School one block away and on various streets in the area.[3] In order to increase its available off-street parking, which it deemed essential to carrying out its mission, St Paul's acquired two lots in 1985, located at 689-691 and 693-695 Far Hills Avenue in Oakwood.[4] The lots adjoin each other and

[2]Oakwood's ordinances provide that, if St Paul's were being built today, or at any time since 1982, it would be required to have 167 off-street parking places on a contiguous lot for the use of its members. Complaint (Doc. #1) at ¶ 24.

[3]The lack of parking places on its property does not prevent Plaintiff from carrying out its mission--even Plaintiff contends (Doc. #26 at 9) that the church can accommodate 500 worshipers and that it is sometimes filled to capacity. Thus, in the present litigation, Plaintiff does not contend that it must have additional parking or that it will be forced to close.

[4]On April 1, 1985, St. Paul's entered into an option agreement to purchase the properties. St. Paul's decided to exercise its option and to purchase the properties in June, 1985.

are north of the northeast corner of St. Paul's property. A dedicated alley, which runs in an east-west direction, separates the lots from St. Paul's worship facility.[5] A duplex was located on each lot, both of which St. Paul's intended to raze. St. Paul's attempted to secure Oakwood's approval to demolish the duplexes and to construct a parking lot, which would provide 56 additional off-street parking spaces, on the then newly vacant lots. The approval process took two separate tracks, one for construction of the parking lot and one for demolition of the existing structures on the lots.

With respect to the construction track, Charles Simms ("Simms"), a member of St. Paul's board of trustees, contacted Oakwood's city manager, David Foell ("Foell"), to learn about the process of obtaining permission to construct the parking lot. Foell informed Simms that, before St. Paul's could construct a parking lot, an amendment to Oakwood's zoning ordinance would be necessary because the lots which St. Paul's was planning to acquire did not adjoin its property.[6] In April, 1985, St. Paul's

---

[5]The alley has no ingress or egress at its eastern end, at Far Hills Avenue. Such ingress and egress is foreclosed by two iron posts which support a heavy steel chain (maintained by Oakwood) which prevents access between Far Hills Avenue and the alley.

[6]Oakwood interprets its zoning ordinance in such a manner that a parking lot can be constructed in a residentially zoned district only if it is located on the same zoning lot as the primary use. Thus, St. Paul's could construct a parking lot only if the tracts of land which it purchased were located on the same zoning lot as its worship facilities. A "zoning lot" is defined by Oakwood's zoning ordinance as "one or more contiguous tracts of land located within a single block...." Oakwood Codified Ordinances § 1101.46(c). Oakwood interprets the term zoning lot in a manner that, when the tracts of land are separated (as in

submitted an application to the Oakwood Planning Commission to amend the zoning ordinance to allow the construction of a parking lot. No action was taken on that application. In 1987, St. Paul's submitted to the Planning Commission a proposed amendment to Oakwood's zoning ordinance. In particular, that amendment would have amended § 1119.02 of the Oakwood Codified Ordinances by adding the following:

> The following special uses may be allowed in the R-1 District, subject to the provisions of Section 1107.05: (r) Unenclosed off-street parking facilities subject to the provisions of Section 1117.08(f)(2), (3) and (4) for use by churches, including chapels, temples, and synagogues, where the zoning lot, upon which the church building is located, is separated by alley(s) from the contiguous zoning lot(s) on which the off-street parking facility is located.

At its meeting of July 1, 1987, the Planning Commission voted to deny St. Paul's proposed amendment. Plaintiff appealed the decision of the Planning Commission to the Oakwood City Council ("Council"). After a number of public hearings, the Council, on September 23, 1987, likewise, voted to deny the proposed amendment.

After its attempt to obtain Oakwood's approval to construct a parking lot was stymied, St. Paul's nonetheless endeavored to obtain permission from Oakwood to demolish the duplexes, in order to eliminate the expense of maintaining the vacant structures. On February 12, 1988, Dave Bunting ("Bunting"), Oakwood's building inspector, sent a letter to Rev. Robert Fenwick ("Fenwick"), St. Paul's pastor. In the letter, Bunting told

---

the present case when an alley runs between them), they are not contiguous and, consequently, not one zoning lot.

Fenwick that he understood that St. Paul's was considering demolishing the duplexes; he then set forth what he asserted were the requirements for obtaining a demolition permit. On April 11, 1988, before St. Paul's had completed the tasks set forth in Bunting's letter and before it had applied for a demolition permit, the Council met and addressed the perceived problem posed by the demolition of the duplexes by adopting, as an emergency measure, Ordinance No. 3735 ("Emergency Measure"). The Emergency Measure provided that a demolition permit cannot be issued until the person seeking to demolish a structure has received approval, from the Planning Commission, of a plan relating to the property after demolition.[7] Section II of the Emergency Measure provides:

> This ordinance is hereby declared to be an emergency measure and as such shall take effect immediately on the basis that it is necessary to provide protection at once for properties that may be exposed to public streets by the demolition of another house or structure, and on the basis of protection of the public peace, health, safety and welfare.

On May 10, 1988, after completing the tasks set forth in Bunting's letter, Simms and counsel for St. Paul's met with Bunting for the purpose of obtaining a demolition permit. They

---

[7]In particular, the plan must describe plantings and other screening, consistent with the appearance of adjacent premises, which will "screen those adjacent properties from any negative visual impact of such items as traffic, noise, parking, light spillage, or pedestrian traffic." The plan must also include deciduous and/or evergreen plantings which will be necessary to protect abutting properties from significant reduction in value as a result of the demolition; screening which will protect abutting owners from any significant loss of enjoyment of their properties as a result of the demolition; and must describe how storm water runoff will addressed so that it is not more severe after demolition than before the demolition.

were told that a permit could not be issued until a plan required
by the Emergency Measure was approved.

In its complaint, Plaintiff sets forth four claims for
relief, one federal claim and three claims based upon state law,
for which it seeks to invoke this Court's pendent jurisdiction.
In particular, Plaintiff sets forth: 1) a claim under 42 U.S.C.
§ 1983, alleging that it has been denied its rights under the
Free Exercise Clause of the First Amendment to the United States
Constitution and the Due Process and Equal Protection Clauses of
the Fourteenth Amendment to the United States Constitution; 2) a
claim that it has been denied its rights of freedom of religion,
due process and equal protection, guaranteed by the Constitution
of the State of Ohio; 3) a claim under Ohio law that the
Emergency Measure was not properly enacted as an emergency
measure; 4) a claim under Ohio law that Defendant is estopped to
deny it a permit to raze the duplexes. Although it is not clear
from Plaintiff's complaint, Plaintiff's memoranda (Doc. ##26 and
43), relating to the pending motions for summary judgment, do
make it clear that Plaintiff's first two claims relate only to
its attempts to secure permission to construct the parking lot.
The third and fourth claims relate only to St. Paul's efforts to
demolish the duplexes. With its complaint, Plaintiff seeks
injunctive and declaratory relief, to wit: a declaration that the
Emergency Measure is null and void; a demolition permit to
demolish the duplexes and a zoning permit allowing it to
construct the parking lot.

This case is now before the Court on motions for summary judgment, that of the Defendant (Doc. #12) and that of the Plaintiff (Doc. #42). In its motion for summary judgment, Defendant argues that it is entitled to summary judgment on Plaintiff's claims under the First and Fourteenth Amendments (Plaintiff's federal claims), that if the Court sustains its motion with respect to Plaintiff's federal claims, this Court should decline to exercise pendent jurisdiction over Plaintiff's state law claims and dismiss those claims for want of subject matter jurisdiction[8] and that, in the event that this Court overrules its motion with respect to Plaintiff's federal claims, it is entitled to summary judgment on Plaintiff's state law claims.[9] In its motion for summary judgment, Plaintiff argues that it is entitled to summary judgment on its claims under the Free Exercise Clause and the Fourteenth Amendment, that it is

---

[8]In its motion for summary judgment, Defendant raises the subject matter jurisdiction issue by requesting that the Court abstain from ruling on Plaintiff's state law claims. See Doc. #12 at 17. However, Defendant's reply memorandum in support of its motion for summary judgment demonstrates, in reality, it is arguing that, with the dismissal of Plaintiff's federal claims, this Court should decline to exercise pendent jurisdiction over the state law claims. See Doc. #29 at 10.

[9]Defendant also sought summary judgment for the Individual Defendants, on the basis of absolute and qualified immunity. With the dismissal of the Individual Defendants (Doc. #58), this branch of Defendant's motion is moot. Parenthetically, the Court notes that Plaintiff seeks only declaratory and injunctive relief; it does not seek money damages. The Sixth Circuit has held that "the defense of qualified immunity protects officials only from a suit for monetary damages." Cagle v. Gilley, 957 F.2d 1347, 1350 (6th Cir. 1992). Absolute, legislative immunity, on the other hand, "is immunity from suit and applies whether the relief sought is money damages or injunctive relief." Alia v. Michigan Supreme Court, 906 F.2d 1100, 1102 (6th Cir. 1990).

entitled to summary judgment on its claims under the Ohio
Constitution and on its claim that the Emergency measure is
invalid because it was not a true emergency measure.[10]   To
resolve the issues raised by the pending motions for summary
judgment, the Court initially will review the standards which
govern all motions for summary judgment.  Then, the Court will
turn to the issues relating to Plaintiff's claims under the First
and Fourteenth Amendments.  Finally, if the Plaintiff's federal
claims do not survive Defendant's motion for summary judgment,
the Court will address the question of whether it should exercise
pendent jurisdiction over some or all of Plaintiff's state law
claims.  It is axiomatic that a federal court should decline to
exercise pendent jurisdiction over state law claims when a
plaintiff's federal claims do not survive a motion for summary
judgment.  United Mine Workers v. Gibbs, 383 U.S. 715, 726
(1966); Webb v. McCullough, 828 F.2d 1151, 1160 (6th Cir. 1987).

---

[10]Plaintiff does not seek summary judgment on its claim of
estoppel.  Plaintiff also seeks summary judgment on its "claim"
under the Establishment Clause of the First Amendment and a
"claim" that the Oakwood zoning ordinance permits it to build the
parking lot.  However, in its complaint, the Plaintiff did not
allege that the Defendant violated the Establishment Clause;
rather, with respect to the First Amendment, Plaintiff relies
solely upon the Free Exercise Clause.  See Plaintiff's Complaint
(Doc. #1) at ¶¶ 2 and 38.  Neither did Plaintiff attempt to set
forth a claim in its complaint that it is permitted by the
Oakwood zoning ordinance to construct a parking lot.  Moreover,
Plaintiff has not sought leave of Court to amend its complaint to
assert either claim.  Therefore, the Court overrules the branches
of Plaintiff's motion in which it seeks summary judgment on its
"claim" under the Establishment Clause and its "claim" predicated
upon the Oakwood zoning ordinance, because no such claims are
properly before the Court.

## I.  Standards governing motions for summary judgment.

A motion for summary judgment "should be granted where the evidence is such that it 'would require a directed verdict [now a judgment as a matter of law] for the moving party.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 25 (1986), quoting Sartor v. Arkansas Gas Corp., 321 U.S. 620, 624 (1944).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

477 U.S. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 [6th Cir. 1987]).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely

reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## II. Plaintiff's claim under the Free Exercise Clause of the First Amendment.

Both Defendants and Plaintiff move for summary judgment on Plaintiff's claim under the Free Exercise Clause of the First Amendment, which provides, in part, "Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof...." The First Amendment has been made applicable to the states and their political subdivisions by incorporation through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296 (1940). The Free Exercise Clause excludes all governmental regulation of religious beliefs. Employment Div., Dept. of Human Res. v. Smith, 494 U.S. 872, 877 (1990). In the present case, there is no allegation that Defendants are attempting in any manner to regulate the beliefs

of Plaintiff or of its members. Rather, Defendants have regulated the Plaintiff's actions by preventing it from constructing a parking lot for the benefit of its congregants or other visitors to its facility.

In support of their motion for summary judgment, both parties rely upon the Sixth Circuit's decision in Lakewood, Ohio Congregation of Jehovah's Witnesses v. City of Lakewood, 699 F.2d 303 (6th Cir.), cert. denied, 464 U.S. 815 (1983), and succeeding cases, all of which have addressed the question of whether a zoning provision, limiting the ability of a religious institution to construct a place of worship, violates the Free Exercise Clause. See, e.g., Christian Gospel Church v. San Francisco, 896 F.2d 1221 (9th Cir. 1990);[11] Messiah Baptist Church v. County of Jefferson, 859 F.2d 820 (10th Cir. 1988), cert. denied, 490 U.S. 1005 (1989); Islamic Center of Miss., Inc. v. City of Starkville, 840 F.2d 293 (5th Cir. 1988); Grosz v. City of Miami Beach, 721 F.2d 729 (11th Cir. 1983), cert. denied, 469 U.S. 827 (1984). In Lakewood, the Sixth Circuit held that Lakewood's zoning ordinance, which limited churches to approximately 10% of the city and under which plaintiff was denied the ability to construct a church on land owned by it, did not violate the Free Exercise Clause. In reaching that conclusion, the Lakewood court applied a two-step analysis:

> First, the nature of the religious observance at stake must be evaluated. And second, the nature of the

[11]Defendant submitted a copy of Christian Gospel Church as its supplemental memorandum of authority (Doc. #61).

    burden placed on the religious observance must be
    identified.

699 F.2d at 306.  Under the first prong of that analytical

framework, courts would judge the importance of the observance in

question, with more important observances being given more

protection.  Id. ("The centrality of the burdened religious

observance to the believer's faith influences the determination

of an infringement.").

    However, the type of analysis employed by the Sixth Circuit

in Lakewood was rejected by the Supreme Court in Employment Div.,

Dept. of Human Res. v. Smith, 494 U.S. 872, 877 (1990).  See

Cornerstone Bible Church v. City of Hastings, 948 F.2d 464, 472

(8th Cir. 1991) (distinguishing Lakewood and other cases

involving free exercise challenges to zoning ordinances because

they were decided before Smith).[12]  Smith was a challenge under

the Free Exercise Clause to a decision by the Oregon Department

of Human Resources, Employment Division ("Employment Division"),

to deny unemployment compensation to Smith and Galen Black.  The

two had been fired for ingesting peyote, and the Employment

Division determined that, as a result, they were discharged for

work related misconduct and were ineligible for unemployment

compensation.  Smith and Black argued that the denial of

unemployment benefits to them violated the Free Exercise Clause,

because they had ingested peyote for sacramental purposes at a

---

    [12]The case relating to its free exercise challenge submitted
by Plaintiff in its supplemental memorandum of authority
(Doc. #62), Our Saviour's Evangelical Lutheran Church v. City of
Naperville, 186 Ill. App.3d 988, 542 N.E.2d 1158 (1989), was also
decided before the Supreme Court decided Smith.

ceremony of the Native American Church.  The Supreme Court rejected the argument that the denial of unemployment benefits violated the Free Exercise Clause.  The Smith Court held that a neutral law of general applicability (i.e. thou shalt not ingest peyote) that incidently impinges on a religious practice (as opposed to a religious belief) cannot be challenged under the Free Exercise Clause.  494 U.S. at 876-82.[13]

Plaintiff's free exercise challenge focuses on Oakwood's refusal, through its interpretation of its zoning ordinance and its rejection of Plaintiff's proposed amendment to that ordinance, to allow it to construct a parking lot.  Plaintiff has been prevented from obtaining a building permit by Oakwood's generally applicable zoning ordinance, under which it would prevent any landowner from building a parking lot in a residential district on a tract of land which is not on the same zoning lot (or on contiguous tracts of land) as the land upon which the landowner's principal use is located.  Oakwood interprets its zoning ordinance in such a manner that a parking lot can be constructed in a residential district only if it is located on the same zoning lot as the principal use.  Herein, the

_____

[13]The Smith Court also declined to follow the balancing test enunciated in Sherbert v. Verner, 374 U.S. 398, 402-03 (1963), under which governmental actions which substantially burden a religious practice must be justified by a compelling governmental interest, because such a test could require courts to determine what beliefs were central to a believer's faith.  494 U.S. at 883-90.  The Smith Court said that courts should not attempt to determine what beliefs are worthy of protection and which are not.  Id.  Thus, the rationale of Smith undercut the Sixth Circuit's decision in Lakewood, which was based, in part, on an analysis of the importance of the burdened practice to the religious observation.

tracts of land upon which St. Paul's seeks to build the parking lot are separated from its worship facilities by an alley. Under Oakwood's interpretation of its zoning ordinance, these tracts of land are not contiguous; consequently, they are not the same zoning lot. Additionally, the Council's rejection of Plaintiff's proposed amendment to the zoning ordinance does not alter this analysis. By rejecting the proposed amendment, the Council merely continued the general application of its zoning ordinance by refusing to grant an exemption, for churches, from the requirement that tracts of land not be separated by an alley to be considered one zoning lot. If the Free Exercise Clause is not violated by a municipality's enforcement of its laws of general applicability, it is certainly not violated when the municipality declines to grant an exemption from those laws to a religious institution.

Based upon the foregoing, the Court concludes that Oakwood has not violated the Free Exercise Clause of the First Amendment, as interpreted by the Supreme Court in Smith, by denying Plaintiff the right to construct a parking lot on the property it acquired for that purpose.[14]  Accordingly, the Court sustains

_____

[14]Even under the analytical framework established by the Sixth Circuit in Lakewood, this Court would conclude that Plaintiff has not been denied its rights under the Free Exercise Clause.  The construction of a parking lot is not part of the religious ritual of the Episcopal Church, although such would make it more convenient for St. Paul's parishioners and other visitors to attend the church.  If prohibiting a church from being built at all, as was done in Lakewood, is not an "unconstitutional burden" on the free exercise of religion, then, surely, merely inconveniencing the exercise or practice of religion by denying the creation of additional parking spaces is not such an unconstitutional burden.  St. Paul's is not being

Defendant's motion for summary judgment (Doc. #12) to the extent
that it seeks summary judgment on Plaintiff's claim under the
Free Exercise Clause and overrules Plaintiff's motion for summary
judgment (Doc. #42) to the extent that it seeks summary judgment
on that claim.

## III.  Plaintiff's claim under the Due Process Clause of the Fourteenth Amendment.

Both parties move for summary judgment on Plaintiff's due
process claim.  The Due Process Clause of the Fourteenth
Amendment provides "nor shall any state deprive any person of
life, liberty, or property, without due process of law."
Plaintiff contends that the Defendant's zoning ordinance and the
Council's failure to amend that ordinance in the manner proposed
by Plaintiff violate the Due Process Clause because these actions
arbitrarily and capriciously deny St. Paul's the right to build a
parking lot on its property.[15]  Thus, Plaintiff asserts a
substantive due process claim rather than one of a procedural
nature.[16]  Recently, in Pearson v. City of Grand Blanc, 961 F.2d

_____

prohibited from practicing its religion or providing its services
to practitioners.  Similarly, St. Paul's congregants are not
being prevented from practicing their religious beliefs.

[15]The zoning ordinance and the Commission's decision not to
adopt Plaintiff's proposed amendment to that ordinance are
indistinguishable for purposes of due process analysis because
both have the effect of preventing Plaintiff from constructing a
parking lot on its property.

[16]With a substantive due process claim, one challenges the
right of the government to deprive one of life, liberty or
property regardless of the adequacy of the procedural protections
afforded.  Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216

1211 (6th Cir. 1992), the Sixth Circuit reviewed substantive due process challenges to zoning actions. The Pearson court noted that "'[w]here property interests are adversely affected by zoning, the courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns ....'" Id. at 1223 (emphasis in the original) (quoting Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68 (1981). Moreover, such legislation is entitled to a presumption of validity. Village of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926). In an action challenging the constitutionality of a local zoning ordinance, the presumption of validity is sufficient to meet the initial burden imposed by Rule 56 of demonstrating the absence of a genuine issue of material fact. Curto v. City of Harper Woods, 954 F.2d 1237, 1242-43 (6th Cir. 1992).

Defendant contends that the Oakwood zoning ordinance is rationally related to a legitimate concern, the preservation of the residential nature of its neighborhoods. It is not questioned and, indeed, cannot be questioned that such is a legitimate concern. See Village of Belle Terre v. Boraas, 416 U.S. 1, 9 (1974) ("A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. ... It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a

---

(6th Cir. 1992). A procedural due process claim focuses only upon the adequacy of the procedural protections afforded.

sanctuary for people."). Therefore, the question is whether the manner by which Oakwood has chosen to further that goal, by limiting the ability of a landowner to construct a parking lot to tracts of land which are on the same zoning lot as the landowner's principal use, is rationally related to that goal. That restriction does limit the number of parking lots which can be located in residential districts in Oakwood; this litigation establishes that fact. There is simply no evidence before the Court tending to indicate that limiting the number of parking lots in residential districts is not rationally related to the preservation of the residential character of neighborhoods.[17] On the contrary, the depositions of the members of the Council demonstrate that they voted to reject the proposed amendment to the zoning ordinance (thus to maintain the existing ordinance) because they were worried as to the impact of a parking lot upon the character of the neighborhood. See also Exhibit G to Defendant's motion for summary judgment (Doc. #12) (Statement of the Mayor of Oakwood indicating that the issue is one of neighborhood integrity and that he would vote against St. Paul's proposed amendment to maintain it); Exhibit E to Defendant's motion for summary judgment (Doc. #12) (Statement of reasons for rejecting St. Paul's proposed amendment by the Planning Commission, including the need to preserve integrity of the

---

[17]Plaintiff points to the fact that Oakwood did not conduct any studies, i.e. a traffic study, before rejecting its proposed amendment. That fact does not demonstrate that the zoning ordinance and the rejection of the proposed ordinance are not rationally related to the stated goal.

character of Oakwood's neighborhoods). Just as the Sixth Circuit concluded in Lakewood that excluding places of worship from residential districts did not violate the Due Process Clause, this Court concludes that limiting parking lots for a place of worship in those districts, likewise, does not offend the Due Process Clause.[18] Accordingly, the Court sustains the Defendant's motion for summary judgment (Doc. #12) to the extent that it seeks summary judgment on Plaintiff's claim under the Due Process Clause of the Fourteenth Amendment and overrules Plaintiff's motion for summary judgment (Doc. #42) to the extent that it seeks summary judgment on that claim.

## IV. Plaintiff's claim under the Equal Protection Clause of the Fourteenth Amendment.

Both parties move for summary judgment on Plaintiff's equal protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). See also, Bannum, Inc. v. City of Louisville, 958 F.2d 1354, 1359 (6th Cir. 1992) ("Different treatment is the initial element of

_____

[18]In addition to asserting a free exercise challenge, the plaintiff in Lakewood challenged the zoning ordinance under the Due Process Clause. The Sixth Circuit concluded that the ordinance did not violate that provision of the Constitution. 699 F.2d at 308-09.

an equal protection violation."). Oakwood, through its zoning
ordinance, does treat, differently, landowners who own more than
one tract of land in a residential district and who wish to
construct a parking lot on one of those tracts. Those whose
tracts abut (i.e. are not separated by a street, alley or other
tract of land) may construct a parking lot. Those whose tracts
do not abut (i.e. are separated by a street, alley or other tract
of land) are not permitted so to construct a parking lot.[19]
When, as in the present case, the classification drawn by the
legislature does not impact upon a suspect class or a fundamental
right,[20] the "legislation is presumed to be valid and will be
sustained if the classification drawn by the statute is
rationally related to a legitimate state interest." Cleburne 473

---

[19]Plaintiff argues that it is being treated differently than
other churches located in Oakwood because it, alone, is not able
to construct a parking lot. Although the Oakwood zoning
ordinance may have prevented only St. Paul's among Oakwood
churches from building a parking lot, that dissimilar treatment,
as Plaintiff concedes, flows from the fact that only St. Paul's
is surrounded by a street and alleys, and thus, unlike the other
churches, does not have an abutting tract of land upon which to
build a parking lot. See Plaintiff's memorandum in opposition
(Doc. #26) to Defendant's motion for summary judgment at 14.
Therefore, Plaintiff cannot claim that it is being treated
differently because of its particular religious beliefs; rather,
St. Paul's is being treated differently than other landowners
(religious institutions and others) because the tract of land
upon which it seeks to build a parking lot is separated, by an
alley, from the lot upon which its worship facilities are
located.

[20]Suspect classes include those based upon race, alienage,
national origin, illegitimacy and sex. Cleburne 473 U.S. at 440-
41. The classification established by the Oakwood zoning
ordinance (differentiating among landowners on the basis of
whether their tracts of land do or do not abut) is not a suspect
class. A fundamental right is one that is protected by some
other provision of the United States Constitution. Id. at 440.
The right to build a parking lot is not a fundamental right.

U.S. at 440. See also, Bannum, 958 F.2d at 1360 ("Historically, the rational relationship level of review is used to determine whether application of a zoning regulation is violative of the equal protection guarantee."). In other words, unless the ordinance deals with a suspect class or a fundamental right, it is constitutional unless there is no reasonable or rational relationship between it and a legitimate state interest. The Cleburne Court explained, "[w]hen social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude ... and the Constitution presumes that even improvident decisions will be rectified by the democratic process." 473 U.S. at 440 (citations omitted).

Above, in connection with Plaintiff's due process claim, the Court has concluded that the Oakwood zoning ordinance, despite denying Plaintiff the ability to construct a parking lot, is rationally related to a legitimate governmental concern, the preservation of the residential character of Oakwood. The rational relationship test is applied in the same manner in equal protection challenges as it is in challenges under the Due Process Clause. Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir. 1990). Accordingly, the Court also concludes that Oakwood has not violated the Equal Protection Clause by preventing Plaintiff from constructing its desired parking lot.[21]

---

[21]With its claim under the Equal Protection Clause, the Plaintiff challenges the manner in which Oakwood has chosen to draw the line differentiating between those landowners who may construct parking lots and those who may not. In the context of an equal protection challenge to a zoning ordinance, the Belle Terre Court addressed the power of the legislature to draw lines:

Therefore, the Court sustains the Defendant's motion for summary
judgment (Doc. #12) to the extent that it seeks summary judgment
on Plaintiff's claim under the Equal Protection Clause and
overrules Plaintiff's motion for summary judgment (Doc. #42) to
the extent that it seeks summary judgment on that claim.

## V. Plaintiff's state law claims.

As is stated above, principles of pendent jurisdiction
dictate that a district court should dismiss without prejudice
pendent state law claims when federal claims are dismissed before
trial. United Mine Workers, 388 U.S. at 726. However, this rule
is not inflexible; rather, federal courts have some discretion to
decide pendent claims after the federal claims have been
dismissed. Taylor v. First of America Bank-Wayne, 973 F.2d 1284,
1287 (6th Cir. 1992); Aschinger v. Columbus Showcase Co., 934

---

> "When a legal distinction is determined, as no one
> doubts that it may be, between night and day, childhood
> and maturity, or any other extremes, a point has to be
> fixed or a line has to be drawn, or gradually picked
> out by successive decisions, to mark where the change
> takes place. Looked at by itself without regard to the
> necessity behind it the line or point seems arbitrary.
> It might as well or nearly as well be a little more to
> one side or the other. But when it is seen that a line
> or a point there must be, and that there is no
> mathematical or logical way of fixing it precisely, the
> decision of the legislature must be accepted unless we
> can say that it is very wide of any reasonable mark."

416 U.S. at 8 n. 5 (quoting Louisville Gas Co. v. Coleman, 277
U.S. 32, 41 [1928] [Holmes, J., dissenting]). This Court has
concluded, above, that the line drawn by Oakwood is not "wide of
any reasonable mark." Parenthetically, many of the Plaintiff's
arguments in this regard are more appropriately directed at the
Council whose function it is to draw the line and not to this
Court whose function is to determine the constitutionality of the
line so chosen.

F.2d 1402, 1412 (6th Cir. 1991). In determining whether to exercise pendent jurisdiction over state claims after federal claims have been dismissed, a court should balance the commonsense policies of judicial economy against the benefits of allowing state courts to decide state law claims. Id. The balance will tip in favor of retaining pendent jurisdiction where the federal and state claims require resolution of the same issue. Id. (District court does not abuse its discretion when it decides state law claims of fraud and breach of fiduciary duty after dismissing federal securities law claim because state law claims involved the same factual questions as the federal claim.).

As Plaintiff argues (Doc. #26 at 40-42), Ohio courts have used standards developed in the context of federal constitutional challenges to alleged deprivations of the free exercise of religion, of property without due process of law and of equal protection when addressing challenges to legislative actions under the analogous provisions of the Ohio Constitution. See e.g., Pater v. Pater, 63 Ohio St.3d 393, 588 N.E.2d 794 (1992) (Article I, § 7, of the Ohio Constitution and the Free Exercise Clause of the First Amendment); In re Milton, 29 Ohio St.3d 20, 505 N.E.2d 255 (1987) (same); Peebles v. Clement, 63 Ohio St.2d 314, 408 N.E.2d 689 (1980) (Article I, §§ 16 an 19 of the Ohio Constitution and the Due Process Clause); Kinney v. Kaiser Aluminum & Chemical Corp., 41 Ohio St.2d 120, 322 N.E.2d 880, 882 (1975) ("The limitations placed upon governmental action by the Equal Protection Clauses of the Ohio and United States

constitutions are essentially identical."). Thus, resolution of
the state constitutional claims involves the same issues as did
resolution of the Plaintiff's federal constitutional challenges.
Resolution of those claims does not require a particular
expertise in state law. Indeed, expertise in federal
constitutional law is both a helpful and an essential condition
precedent to dealing with claims under the Ohio Constitution.
Moreover, in this case, the parties have conducted extensive
discovery relating to the state and federal constitutional claims
and have extensively briefed those issues. It would be both
unfair and ridiculous, at this point, to require the parties to
reargue the state constitutional issues and to require a state
court judge to "reinvent the wheel" on those issues. Therefore,
this Court concludes that principles of judicial economy dictate
that it retain pendent jurisdiction over the Plaintiff's claims
based upon asserted violations of the Ohio Constitution, set
forth in its second claim for relief.

However, there is no relationship between Plaintiff's
federal and state constitutional claims, on the one hand, and its
other two state law claims (the third and fourth claims for
relief), on the other, in which it challenges the Emergency
Measure and the Defendant's refusal to allow it to raze the
duplexes. Unlike the state constitutional claims, these claims
raise questions which state courts are uniquely qualified to
resolve. Therefore, the Court declines to exercise pendent

jurisdiction over the Plaintiff's third and fourth claims for relief and same will be dismissed without prejudice.[22]

As is indicated, the analytical framework by which Plaintiff's federal constitutional claims are assessed does not differ from that which applies to its state constitutional claims.[23] Therefore, for the reasons set forth above in its discussion of Plaintiff's claims under the Free Exercise Clause, the Due Process Clause and the Equal Protection Clause, this Court concludes that Defendant is entitled to summary judgment on Plaintiff's state constitutional claims (the second claim for relief in Plaintiff's complaint). Accordingly, the Court

---

[22]Because it declines to exercise pendent jurisdiction over Plaintiff's third and fourth claims for relief, the Court does not rule on either party's motion for summary judgment to the extent that the motions relate to the substance of those claims.

[23]Since the United States Supreme Court decided Smith, the Ohio Supreme Court has not addressed the question of the validity of a zoning ordinance, challenged under Article I, § 7 of the Ohio Constitution as a denial of the free exercise of religion. Therefore, that court has not definitively said that, when confronted with such a challenge, it would follow the analytical framework established by Smith, as opposed to that posited by the Sixth Circuit in Lakewood. However, in Pater, the Ohio Supreme Court addressed a free exercise challenge, under the Free Exercise Clause and Article I, § 7, of the Ohio Constitution, to a domestic relations court award of child custody. The Pater court discussed the federal and state constitutional challenges together and cited Smith with approval. Additionally, this Court could not find, and counsel have not cited, a single decision by any Ohio court which expressed disapproval of the analytical framework of the Smith Court. Therefore, given the tradition that Ohio courts will follow decisions of the United States Supreme Court interpreting the Free Exercise Clause in cases involving challenges under Article I, § 7, this Court is convinced that the Ohio Supreme Court would follow Smith in a case involving the constitutionality of a zoning ordinance. Accordingly, Smith provides the correct analytical framework for resolving Plaintiff's free exercise challenge under Article I, § 7, of the Ohio Constitution.

sustains Defendant's motion for summary judgment (Doc. #12) to the extent that it seeks summary judgment on Plaintiff's claims under the Ohio Constitution and overrules Plaintiff's motion for summary judgment (Doc. #42) to the extent that it seeks summary judgment on those claims.

Based upon the foregoing, the Court sustains Defendant's motion for summary judgment (Doc. #12) as it relates to Plaintiff's federal and state constitutional claims and overrules Plaintiff's motion for summary judgment (Doc. #42) on those claims. The Court directs that judgment be entered in favor of Defendant and against Plaintiff, dismissing Plaintiff's federal and state constitutional claims (the first and second claims for relief in its complaint) with prejudice. The Court declines to exercise pendent jurisdiction over the third and fourth claims in Plaintiff's complaint and directs that judgment be entered dismissing those claims without prejudice.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

_____
WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE

Copies mailed to:

Jon M. Sebaly, Esq.
David C. Greer, Esq.